**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VIRGINIA R. DIMITRI, ET AL.,** | : | |
| | : | Case No.   19-cv-01329-JMY |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| **CITY OF PHILADELPHIA, ET AL.,** | : | |
| | : | |
| *Defendants* | : | |

**MEMORANDUM**

**YOUNGE, J.**                                                                                    **OCTOBER 15, 2019**

Before the Court is Defendants'—City of Philadelphia ("City") and City of Philadelphia Police Department ("PPD") (collectively, "Defendants")—Motion to Dismiss for Failure to State a Claim (Dkt. 2).  The Court finds this matter appropriate for resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons that follow, Defendants' Motion will be granted.

**I.      BACKGROUND**

       **A.  Facts[1]**

Plaintiff, Virginia R. Dimitri, individually and as Administratrix of the Estate of Daniel J. Dimitri (hereinafter, "Plaintiffs"), brings this action against Defendants in connection with the tragic death of her son, Daniel J. Dimitri.  Compl. ¶ 1.  On January 31, 2017, Daniel J. Dimitri was crossing the street in Philadelphia when he was struck and killed by a motor vehicle operated by Adam Soto "who, at that time, was an off-duty police officer."  *Id.* ¶ 4.  It is alleged that at the time of the accident, Adam Soto was drag-racing at an excessive speed against a fellow off-duty police officer, Anthony Forest.  *Id.* ¶¶ 5-7, 21.  At the time of the accident, both Adam Soto and Anthony

---

[1] Unless otherwise noted, the following facts are taken from Plaintiffs' Complaint ("Compl.") (Dkt. 1).

Forest were employed as police officers with the City of Philadelphia Police Department. *Id*. ¶ 8. Therefore, Plaintiffs maintain that Defendants were responsible at all times for the monitoring of Officers Soto and Forest. *Id*. ¶ 9.

Plaintiffs assert that Defendants knew, or should have known at the time of the accident, that Officers Soto and Forest both had substance abuse issues, as well as the "propensit[y] to operate vehicles at excessive speeds and/or drag race[.]" *Id*. ¶¶ 13-14, 22. Plaintiffs further assert that Defendants had a documented substance abuse policy, yet failed to implement it against Officers Soto and Forest, and such failure to follow internal policies was the proximate cause of Daniel J. Dimitri's death. *Id*. ¶¶ 12, 15-16. Plaintiffs also allege that Defendants were aware that Officers Soto and Forest had both been previously reprimanded for operating their vehicles at excessive speeds/careless driving, and yet disregarded a documented policy requiring Defendants to remove the driving privileges of employees with moving violations. *Id*. ¶¶ 24-26. Consequently, Plaintiffs allege that "Defendants individually and/or collectively caused the death of" Daniel J. Dimitri. *Id*. ¶ 27.

Based on this course of events, Plaintiffs assert six claims for relief:

**COUNT 1**:  42 U.S.C. § 1983, asserted against Defendant City

**COUNT 2**:  42 U.S.C. § 1983, asserted against Defendant PPD

**COUNT 3**:  42 U.S.C. § 8542, asserted against Defendant City

**COUNT 4**:  42 U.S.C. § 8542, asserted against Defendant PPD

**COUNT 5**:  Wrongful Death, asserted against Defendants City and PPD

**COUNT 6**:  Survival Action, asserted against Defendants City and PPD

*See generally id*. at 17-21. Plaintiffs request general damages, delay damages, costs of suit, and such other relief as the Court deems just and equitable. *Id*.

### B. Procedural History

Plaintiffs filed this action in the Court of Common Pleas, Philadelphia County, on January 29, 2019. Notice of Removal (Dkt. 1) at 6. Defendants removed the action to this Court on March 29, 2019, pursuant to 28 U.S.C. § 1441. *See id*.

On April 5, 2019, Defendants filed their Motion to Dismiss For Failure to State a Claim ("Motion") (Dkt. 2). On May 15, 2019, Plaintiffs filed their Response ("Response") (Dkt. 6) as well as a Motion to Compel Answers to Interrogatories and Requests for Production of Documents ("Motion to Compel") (Dkt. 5). The Court denied Plaintiffs' Motion to Compel on June 27, 2019 ("Order on Motion to Compel") (Dkt. 8).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts, which, if true, would entitle the complainant to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion to dismiss, "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (citing *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should

identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *City of Cambridge Retirement System v. Altisource Asset Management Corp*., 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

## III.   DISCUSSION

Defendants argue that Plaintiffs' Complaint, and the claims alleged therein, should be dismissed with prejudice for several reasons. *See generally* Motion. First, Defendants argue that Plaintiffs' claims against Defendant PPD must be dismissed because Defendant PPD cannot be sued as a matter of law. *Id*. at 5. Second, Defendants contend that Plaintiffs' *Monell* claim against Defendant City fails because none of the actions of the off-duty police officers operating their

personal vehicles constitutes "state action." *Id*. at 6. Lastly, Defendants maintain that Plaintiffs have failed to plead sufficient facts for Defendant City to be liable under the Motor Vehicle Exception of the Tort Claims Act. *Id*. at 9. In their Response, Plaintiffs only address Defendants' *Monell* argument, noting that "[i]n all candor to the Court, Plaintiffs may not make out a claim that could withstand a future motion to dismiss . . . but Plaintiffs should have the opportunity to engage in discovery and amend their complaint, if necessary, based on obtaining information in the exclusive possession of Defendants." Response at 8-10. The Court will address each of Defendants' arguments in turn.

### A. Claims Asserted Against Defendant PPD

The ancillary municipal defendant in this action, City of Philadelphia Police Department, must be dismissed as a matter of law because the police department does not have an independent corporate existence from the City of Philadelphia. *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780 (E.D. Pa. 2005) (dismissing with prejudice city police department and detective division as they were not separate legal entities); *see Baldi v. City of Philadelphia*, 609 F. Supp. 162, 168 (E.D. Pa. 1985); *see also Frazier v. City of Philadelphia*, 2006 WL 3000959, at *1 (E.D. Pa. Oct. 18, 2006) (finding that the Philadelphia sheriff's office was not a suitable entity, but that the City and its employees were). Furthermore, suits against the police department must be made in the name of the City of Philadelphia:

> [N]o [department of the City of Philadelphia] shall be taken to have
> had, since the passage of the act to which this is a supplement, a
> separate corporate existence, and hereafter all suits growing out of
> their transactions . . . shall be in the name of the city of Philadelphia.

53 Pa. Stat. Ann. § 16257; *see also Baldi*, 609 F. Supp. at 168.

**B. 42 U.S.C. § 1983 *Monell* Claim Asserted Against Defendant City**

The parties dispute whether Plaintiffs have sufficiently alleged facts in their Complaint demonstrating that Officers Soto and Forest were acting under color of state law at the time of the accident and whether the Officers' actions were the result of Defendant City's policies, customs, or practices.

Section 1983 provides a remedy against "any person" who, under color of state law, deprives another person of rights protected by the Constitution. *See* 42 U.S.C. § 1983. In *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690 (1978), the Supreme Court held that Congress intended municipalities and other local government entities to be included among those persons to whom Section 1983 applies. Thus, local governments are considered to be "persons" subject to liability under Section 1983 when official policy or custom brings about a constitutional injury. *See id*. If a constitutional violation is proven to result from a local government's official policy, practice, or custom, that government or governmental entity may be held liable. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690). Accordingly, the analysis requires the separation of two issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

In order to establish a claim under Section 1983, Plaintiffs must first demonstrate that a violation of a right secured by the constitution occurred and that the alleged deprivation was committed by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *see also Washington-Pope v. City of Philadelphia*, 979 F. Supp. 2d 544, 551 (E.D. Pa. 2013). "[U]nder 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). "If an individual is possessed of state authority and purports to act under

that authority, his action is state action." *Griffin v. Maryland*, 378 U.S. 130, 135 (1964). Our Court of Appeals has found that the same rule applies to off-duty police officers such that they also act under color of state law for purposes of a Section 1983 claim when they purport to exercise official authority. *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994). Officers act under color of law if they depend upon the "cloak of the state's authority" as a means to commit the alleged acts, and if that authority enables the officer to do what he did. *Id*. at 815-16. Thus, it follows that a police officer's "purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Id*. at 817; *see also Mark*, 51 F.3d at 1150 ("It is well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.").

To determine if an officer's actions constitute "state action," courts often ask whether the nature of the actions performed by the officer is consistent with actions taken by a police officer. *See Barna*, 42 F.3d at 816. "An off-duty officer's actions are purely private when he or she becomes involved in a dispute without any evidence of police actions calculated to preserve the peace, protect life and property, arrest violators of the law or prevent crime." *Pryer v. City of Philadelphia*, 2004 WL 603377, at *4 (E.D. Pa. Feb. 19, 2004). Moreover, finding that an off-duty officer acted under color of law generally requires several indicia of official action. *See Barna*, 42 F.3d at 817 (courts look for "indicia of police authority"). Such factors often deemed relevant, but not *per se* determinative, include: whether the officer was on-duty, whether the officer's actions were related to his job as a police officer, whether the officer identified himself as a police officer, wore a police uniform or plainclothes, flashed a badge, or used a police car or other police equipment. *See, e.g., Barna*, 42 F.3d at 816 (whether actions were related to official police duties); *Griffin*, 378 U.S. at 135 (whether police officer identified himself as an officer);

7

*Bonenberger v. Plymouth Township*, 132 F.3d 20, 24 (3d Cir. 1997) ("[O]ff-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law."); *Hunte v. Darby Borough*, 897 F. Supp. 839, 841 (E.D. Pa. 1995) (off-duty officer who allegedly assaulted two individuals did not act under color of law because he was not in uniform, did not display a police badge, did not identify himself as a police officer and did not attempt arrest); *Pryer*, at *15-16 (off-duty officer was not acting under color of state law when the underlying nature of the incident was personal and the officer was in plainclothes, was driving his own car, and never gave any indication he was on official business).

Accepting as true all allegations in Plaintiffs' Complaint, it seems evident to the Court that, as currently alleged, the underlying nature of the accident was in large part personal. For example, Plaintiffs merely assert in their Complaint that Daniel J. Dimitri was "killed by a motor vehicle operated by Adam Soto, who, at that time, was an off-duty police officer," and that Soto and Forest where [*(sic)*] racing their vehicles" . . . [and] "engaging in a 'drag race' . . . prior to Soto striking the decedent." Compl. ¶¶ 4-7. These facts suggest that the accident as described had nothing to do with official police business. Plaintiffs do not clearly allege whether the Officers were in uniform or plainclothes, whether they were operating their personal vehicles or a police vehicle, whether they were driving at excessive speeds as a matter of police business, and whether at any time Officers Soto or Forest identified themselves as officers or flashed their badges prior to the accident. Thus, the Court finds that Plaintiffs have failed to sufficiently allege facts in their Complaint demonstrating that Officers Soto and Forest were acting under color of state law at the time of the accident.

As noted above, claims against the City of Philadelphia are analyzed under the standard for municipal liability set forth in *Monell*. However, local governments may not be found liable

for the actions of their employees on a garden-variety respondeat superior theory. *Bd. of Cnty. Comm'rs*, 520 U.S. at 404. For this reason, Plaintiffs' *Monell* claim cannot move forward as currently pled, as Plaintiffs have failed to state a claim for an underlying constitutional violation committed by a state actor. *See, e.g, Mark,* 51 F.3d at 1149-50 (it is irrelevant for purposes of Section 1983 liability whether the municipality's policies caused an injury when plaintiff fails to establish a constitutional injury); *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.29 (3d Cir. 1995) ("Of course, had there not been an underlying constitutional violation in the first instance, plaintiff's 'failure to train' claim against the city would not stand."); *see also Collins*, 503 U.S. at 122-23.

In summary, the Court finds that Plaintiffs have failed to plead facts in their Complaint sufficient to raise state action, and therefore Plaintiffs have failed to plead an underlying constitutional violation which is required in order to establish municipal liability under Section 1983. *See Monell*, 436 U.S. at 690.

### C. TCA Claim Against Defendant City

Arguing for dismissal of the Political Subdivision Tort Claims Act ("TCA") state claim, Defendant City argues that "the motor vehicle exception does not apply because Forest and Soto were operating their personal cars while off duty and while engaging in an activity not sanctioned by their employer." Motion at 10. The Court agrees.

The TCA provides municipalities with general immunity from tort liability, as follows:

> Except as otherwise provided in this subchapter, no local agency
> shall be liable for any damages on account of any injury to a person
> or property caused by an act of the local agency or an employee
> thereof or any other person.

42 Pa.C.S.A. § 8541. Importantly, the TCA enumerates eight exceptions to immunity for local agencies. Plaintiffs claim that Defendant City is liable under the "motor vehicle" exception to the TCA, which provides:

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability…*

42 Pa.C.S.A. § 8542 (emphasis added).

In this Court's view, Plaintiffs have failed to allege facts demonstrating that the motor vehicle exception to the TCA applies. A plain reading of the statute reveals that the motor vehicle exception to the TCA is triggered solely by the use of a motor vehicle in the exclusive possession or control of the City of Philadelphia, the exception does not apply to the use of a vehicle by an off-duty police officer in their personal pursuits. *See Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 1988) ("Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed.").

IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion will be granted. An appropriate order follows.

**BY THE COURT:**

/s/ Judge John Milton Younge

Judge John Milton Younge